In re BURT.

BURT et al. v. LYNCH.   (No. 103/84.)

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

HABEAS CORPUS ⬤⟜99—INFANT—PERSONS ENTITLED TO APPOINTMENT.

Where an infant, whose mother died when he was two years old, was shortly thereafter placed by his father in an orphan asylum, and on the father's dying request, pursuant to his written order, was taken by the father's sister, who was in well-to-do circumstances, to her home, where there were no children, the sister was entitled to his possession on application by his maternal grandfather, who was also well-to-do, but who, together with his wife, was advanced in years for appointment of a guardian.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. ⬤⟜99.]

Appeal from Order of Surrogate, Rensselaer County.

Proceeding by William Lynch, for his appointment as general guardian of the person of Harry Burt, an infant. From a decree appointing Frank F. Peterson the general guardian of the person of the infant, the petitioner appeals.   Affirmed.

Argued March term, 1915, before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Rockwood & McKelvey, of Saratoga Springs (George H. Stenacher, of Saratoga Springs, of counsel), for appellant.

Young & Young, of Hudson Falls (W. Chase Young, of Hudson Falls, of counsel), for respondents.

PER CURIAM.   Harry Burt, the person whose custody we are now considering, is an infant about five years of age.   Both of the parents of the infant are dead.   The mother died when the infant was about two years old.   About three weeks after the death of the mother, the father placed the child in the Troy Orphan Asylum, where he remained until October 6, 1914, when at the request of the father made on his deathbed, and pursuant to a written order signed by him, the child was taken by Mabel Burt Peterson, a sister of the father, to her house at Jamestown, N. Y., where he is living now.   On petition of William Lynch, the grandfather on the mother's side, proceedings were instituted in the Surrogate's Court of Rensselaer county for the appointment of the petitioner as general guardian of the person of the infant.   These proceedings resulted in the appointment of Frank F. Peterson, husband of Mabel Burt Peterson, the sister of the infant's father; she being the same person into whose custody the child had been delivered by its father at the time of his last illness.

This is a strife for the possession of the infant between the relatives of the mother on the one side and the relatives of the father on the other.   The evidence discloses that the parties to this controversy are all respectable and fairly well-to-do.   Mr. Lynch, the grandfather on the mother's side, is in receipt of a comfortable income and could, without doubt, support the infant properly; but he is 65 years of age,

⬤⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a man somewhat advanced in life, as is also Mrs. Lynch, his wife, the grandmother on the mother's side. Frank F. Peterson, who has been appointed guardian, is 41 years old, and his wife, Mabel Burt Peterson, is 10 years younger. They have no children. The grandmother of the child on the father's side resides in the household of Mr. Peterson. The Petersons own their own home in Jamestown and live well and seem to be in good circumstances. Their house is new, having been built only about a year. It is steam heated and equipped with electric lights and a bathroom. There is a schoolhouse right near their home. Mr. Peterson is engaged in the monument business at Jamestown. Considering all these circumstances, we think the learned Surrogate exercised his discretion wisely in appointing Mr. Peterson guardian of the infant. The welfare of the infant is the polestar which should guide courts in selecting a custodian for a minor child. In this instance we think this rule was observed by the Surrogate. We say this, however, without any reflection upon the family of the mother of this child, for, as we have already observed, they are respectable people, in comfortable circumstances in life. The grandparents are, however, advanced in years, and in the natural order of things, even had Mr. Lynch been appointed guardian, he would have grown incompetent to bring up the child to manhood by reason of bodily infirmity. For this reason, principally, we think it was the wiser course to select Mr. Peterson to perform that duty.

The decree of the Surrogate should be affirmed, without costs.